# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**KINDRA E. SATTLER,**

        **Plaintiff,**

    **v.**                                  **Civil Action 2:20-cv-3549**
                                                 **Judge Edmund A. Sargus, Jr.**
                                               **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kindra E. Sattler, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income benefits ("SSI"). Pending before the Court is Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 20), Plaintiff's Reply (ECF No. 21) and the administrative record (ECF No. 12). For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **OVERRULE** the Commissioner's non-disability finding and **REMAND** this case pursuant to Sentence 4 of § 405(g) for further consideration.

## I.    BACKGROUND

Plaintiff protectively filed an application for benefits on September 1, 2016, alleging that she has been disabled since May 14, 2005. (R. at 773.) Plaintiff's application was denied initially in January 2017, and upon reconsideration in May 2017. (R. at 620–41, 643–60.) On November 27, 2018, Plaintiff appeared without counsel at a hearing held by an Administrative Law Judge. (R. 591–07.) Plaintiff testified that although she had received help from a case manager, her medical record was inaccurate and incomplete and that she had not been able to obtain counsel. (R. at 595–96, 598, 601–02, 605–06.) The ALJ instructed Plaintiff to continue seeking counsel and informed her that she had 30 days to submit missing medical records. (605–06.) Plaintiff obtained counsel and another hearing was held by the ALJ on May 23, 2019. (R. at 356–78.) A vocational expert ("VE") also appeared and testified. (*Id*.) On June 10, 2019, the ALJ issued a determination finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 323–355.) On May 13, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's non-disability determination as the Commissioner's final decision. (R. at 475–81.) Plaintiff timely commenced this action. (ECF No. 1.)

Plaintiff alleges that the ALJ erred when analyzing and weighing medical opinion evidence. Specifically, Plaintiff alleges that it was error for the ALJ to assign "great weight" to the opinions from the state agency psychological reviewers but then fail to adequately explain why their opined social interaction limitations were altered when they were incorporated into Plaintiff's RFC. The Undersigned agrees.

## II.     THE ALJ'S DECISION

On June 10, 2019, the ALJ issued the non-disability determination. (R. at 323–355.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since August 11, 2016. (R. at 328.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; anxiety; personality disorder; panic disorder; and dysthymic disorder. (R. at 329.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 331.) Before proceeding to step four, the ALJ set forth Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to: perform light work as defined in 20 C.F.R. § 416.967(b) except frequently climb ramps and stairs; occasionally climb ladders; frequently balance and stoop; able to understand, remember, and carry out simple, repetitive tasks; able to respond appropriately to supervisors and coworkers in a task oriented setting wot [*sic*] no public contact and

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Case: 2:20-cv-03549-EAS-EPD Doc #: 22 Filed: 09/27/21 Page: 4 of 11 PAGEID #: 1875


occasional interaction with coworkers; able to adapt to simple changes and avoid hazards in a setting without strict production quotas.

(R. at 334.)

At step four, the ALJ determined at step four that Plaintiff had no past relevant work history. (R. at 348.) The ALJ relied on testimony from the VE at step five to determine that in light of Plaintiff's age, education, work experience, and RFC, she was able to perform jobs that existed in significant numbers in the national economy. (*Id*.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act since August 11, 2016. (R. at 502.)

## III.    RELEVANT RECORD EVIDENCE[2]

## A.    Plaintiff's Testimony

At the May 23, 2019, hearing, Plaintiff testified to all the following about her mental health impairments. Plaintiff had psychological diagnoses. (R. at 359.) At her last job, Plaintiff sat at a guard shack but that got to be too hard because of conflicts she had with truck drivers, plant managers, and her supervisor, who was verbally abusive and acted inappropriately. (R. at 363.) Plaintiff explained that the male guards were intimidating, and some were also verbally abusive. (R. at 368.) Plaintiff had been physically and mentally abused by men her whole life. (R. at 369.) Plaintiff became scared about going outside at night at work after she had to call police for intruders several times, and thus, she stopped performing some of her job duties, such as checking buildings outside. (R. at 369, 371.) That caused some conflicts. (R. at 369.) She also felt stress about not doing her job correctly. (R. at 371.) During that time, she was not taking her mental health medications because she needed to drive to and from work and they would make her sleepy. (R. at 372.) But she currently cried all the time and spent seventy per

---

[2] Because Plaintiff's allegations of error pertain only to her mental impairments and limitations, the Undersigned's discussion and analysis is limited to the same.

cent of her day in bed crying even while taking her medications.  (R. at 372–73.)  Plaintiff was sent to a different work post after she requested a leave at that guard shack job, but it was "ten times harder" and she had to quit.  (R. at 363.)

Plaintiff sustained an injury to her lower neck and spine while working at the guard shack job and sought workers compensation.  (*Id*.)  She had conflicts with the representative from that company who was "lying on [her]" during the workers compensation process.  (R. at 363–64.)  She was not awarded workers compensation because of her pre-existing conditions but she did not appeal it because she was tired and weak.  (R. at 364.)

Plaintiff is a slow learner as evidenced by the ten-year period it had taken her to earn seventy college credits.  (R. at 365.)  She had been in counseling for almost three years which consisted of weekly home visits with a case manager and a therapist, and in-office visits with a psychiatrist.  (R. at 373–74.)  They had helped a lot with focusing on positive things and tried to keep her "managed."  (R. at 373.)

**B.      State Agency Psychological Reviewers, Drs. Murray-Hoffman and Tishler**

On October 27, 2016, Plaintiff's file was reviewed at the initial level by state agency psychological reviewer Robyn Murray-Hoffman, Ph.D.  (R. at 636–38.)  Dr. Hoffman opined that Plaintiff understand and remember simple routine tasks.  (R. at 637.)  Dr. Hoffman further opined that Plaintiff was able to complete simple 1–3 step tasks which are repetitive and are not tied to strict production standards or sustained fast pace requirements.  (R. at 638.)  In addition, Dr. Hoffman opined that Plaintiff was capable of adapting to a static setting and where changes are explained in advance, and she had minimal interaction with others.  (*Id*.)  Dr. Hoffman also opined that Plaintiff should not have any over-the-shoulder supervision.  (*Id*.)  Last, Dr. Hoffman opined that Plaintiff was limited to interacting superficially with coworkers and that she should not interact with the public due to her personality disorder, and her depressive and anxiety

5

symptoms.  (*Id.*)  On May 4, 2017, Plaintiff's file was reviewed at the reconsideration level by

state agency psychological reviewer Carl Tishler, Ph.D., who opined the identical limitations.

(R. at 658.)

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"take into account whatever in the record fairly detracts from [the] weight" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley

v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of

the Commissioner will not be upheld where the SSA fails to follow its own regulations and

6

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th

Cir. 2007)).

## V.    ANALYSIS

Plaintiff alleges that the ALJ erred by giving great weight to the opinions from the state

agency reviewers but then failing to adequately explain why he altered their social interaction

limitations before incorporating them into Plaintiff's RFC.  This allegation of error has merit.

The determination of a claimant's RFC is an issue reserved to the Commissioner.  20

C.F.R. §§ 404.1527(d), 416.927(d).  Nevertheless, substantial evidence must support the

Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D.

Ohio June 18, 2010).  An ALJ must also explain how the evidence supports the limitations that

he or she sets forth in a claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations). In
> assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the individual can
> perform based on the evidence available in the case record. The adjudicator must
> also explain how any material inconsistencies or ambiguities in the evidence in the
> case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted).

Here, the ALJ assigned the state agency psychologists' opinions "great weight" because

they were "based on a review of the record that was available" at the time of their review and

their "opinions were consistent with [Plaintiff's] mental health treatment records and reported

symptoms."  (R. at 345.)  Nevertheless, the ALJ altered a key aspect of their opinions without

explaining why he did so.  Drs. Murray-Hoffman and Tishler both opined that Plaintiff was

limited to interacting superficially with coworkers. (R. at 638, 657.) But the ALJ determined

that Plaintiff was able to respond appropriately to supervisors and coworkers in a task-oriented

setting with no public contact and *occasional* interaction with coworkers." (R. at 334.)

(emphasis added). The ALJ therefore limited Plaintiff to "occasional" interactions with

coworkers instead of "superficial" interactions with coworkers. The ALJ also failed to provide

any explain as to why he made that modification.

Defendant does not dispute that the ALJ gave the state agency reviewers' opinions great

weight. Nor does Defendant dispute that the ALJ failed to discuss why he substituted an

occasional interaction for a superficial interaction limitation. Instead, Defendant contends that

"many courts" in other Circuits have affirmed RFC assessments where ALJs included occasional

interaction limitations in RFCs even though superficial interactions were instead opined. (Doc.

20, at PageID # 1864.) Those cases are not controlling. (*Id*.)

Moreover, Courts in the Sixth Judicial Circuit have explicitly recognized that superficial

interactions and occasional interactions are not coextensive. Courts in this Circuit have

explained that "'[o]ccasional contact' goes to the quantity of time spent with [] individuals,

whereas 'superficial contact' goes to the quality of the interactions." *Lindsey v. Comm'r of Soc.

Sec.*, No. 2:18-cv-18, 2018 WL 625473, at *4 (S.D. Ohio Nov. 30, 2018) (quoting *Hurley v.

Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)), *report

and recommendation adopted*, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019); *Redd v. Comm'r of

Soc. Sec*., No. 1:20-cv-222, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021) ("With regard

to social limitations, courts have distinguished limitations that concern "the quality or nature of

interactions" from limitations that concern "the quantity of time involved with those

interactions.") For that reason, Courts in this Circuit routinely find that an ALJ may not replace

a social functioning limitation regarding "superficial" interactions with one regarding "occasional" interactions, absent explanation. *See e.g.*, *Corey v. Comm'r of Soc. Sec*., No. 2:18-cv-1219, 2019 WL 3226945, at \*4 (S.D. Ohio, July 17, 2019) (remanding because "where, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so[,]" otherwise, the court is unable to "conduct[ ] meaningful review to determine whether substantial evidence supports his decision"); *Fenton v. Comm'r of Soc. Sec.*, No. 1:20-CV-413, 2021 WL 3721212, at \*3 (S.D. Ohio Aug. 23, 2021), (ALJ committed reversible error by assigning great weight to opinion that the plaintiff was limited to superficial interactions but including an occasional interaction limitation in plaintiff's RFC in its place without explaining the substitution), *report and recommendation adopted*, No. 1:20-CV-413, 2021 WL 4077990 (S.D. Ohio Sept. 8, 2021); *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-CV-3820, 2021 WL 3087639, at \*4 (S.D. Ohio July 22, 2021), (same) *report and recommendation adopted*, No. 2:20-CV-3820, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021); *Hutton v. Commissioner of Social Security*, 2020 WL 3866855, at \*4 (S.D. Ohio July 9, 2020), (same), *report and recommendation adopted*, 2020 WL 4334920 (S.D. Ohio July 28, 2020); *Clampit v. Comm'r of Soc. Sec.*, No. 3:20-CV-1014, 2021 WL 3174111, at \*2 (N.D. Ohio July 26, 2021) (same).

Defendant additionally contends that the ALJ fully incorporated the superficial interaction. (ECF No. 21, at PageID # 1863). Defendant asserts that the ALJ limited Plaintiff to occasional interactions with coworkers in a task-oriented setting and that this constituted a superficial interaction limitation. (ECF No. 21, at PageID # 1863). The Undersigned is not persuaded. The ALJ indicated that Plaintiff was able to respond appropriately to others in a task-oriented setting that had no public contact and occasional interaction with coworkers. (R. at

334.)  It therefore appears that the phrase "in a task-oriented setting" described a type of setting (i.e., one with no public contact and occasional interactions with coworkers) rather than a type of contact.

In sum, the ALJ assigned significant weight to the State agency psychologists' opinions but failed to include their opined limitation for "superficial interactions" or offer an adequate explanation for declining to do so.  That lack of discussion "deprived this court of a 'logical bridge between the evidence on the record and his conclusion[.]'"  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011).  As a result, the ALJ's decision does not allow for an adequate review by this Court.  For these reasons, it is **RECOMMENDED** that Plaintiff's allegation of error be **SUSTAINED**.

## VI.   CONCLUSION

For the reasons described herein, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence 4 of § 405(g) for further consideration consistent with the Report and Recommendation.

## <u>PROCEDURE ON OBJECTIONS</u>

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

**IT IS SO ORDERED.**

**Date: September 27, 2021**              */s/ Elizabeth A. Preston Deavers*
                                          **ELIZABETH A. PRESTON DEAVERS**
                                          **United States Magistrate Judge**

11